Opinion
 

 ELIA, Acting P. J.
 

 In this case, we determine whether section 223 of the Code of Civil Procedure, added by the June 5, 1990, adoption of Proposition 115, abrogates the holding in
 
 Hovey
 
 v.
 
 Superior Court
 
 (1980) 28 Cal.3d 1 [168 Cal.Rptr. 128, 616 P.2d 1301].
 
 [1]
 
 As we explain, we conclude section 223 abrogates Hovey's requirement of individual sequestered voir dire during the death qualification portion of a capital case. Section 223 does not require individual sequestered voir dire but leaves the matter to the trial court’s discretion. Because the trial court here did not exercise this discretion, we will issue the peremptory writ of mandate.
 

 Facts and Procedural Background
 

 Petitioner Daniel Covarrubias is charged with three counts of murder (Pen. Code, § 187), with multiple murder and felony-murder special circumstances (Pen. Code, § 190.2, subd. (a)(3), (17)), and with murder by lying-in wait (Pen. Code, § 190.2, subd. (a)(15)). Petitioner is also charged with the attempted murder of an infant (Pen. Code, § 664/187, subd. (a)), three counts of robbery (Pen. Code, § 212.5, subd. (a)), burglary (Pen. Code, § 459), assault with a firearm (Pen. Code, § 245, subd. (a)(2)) and conspiracy (Pen. Code, § 182, subd. (a)(1)). Various enhancements are charged attendant to the substantive offenses.
 

 On December 27, 1996, petitioner moved for individual sequestered or small group voir dire.
 
 (Hovey
 
 v.
 
 Superior Court, supra,
 
 28 Cal.3d 1.) The Monterey County District Attorney did not oppose the motion.
 

 The trial court denied the request for
 
 Hovey
 
 voir dire. It found that “individual and sequestered voir dire is not only not required, but that the lawful process and the best process is to conduct voir dire whenever possible in the presence of other jurors.” The court further explained that “while it is true that the
 
 Hovey
 
 case has not been specifically overruled by another case, another California Supreme Court case, it has been effectively overruled with the enactment of Proposition 115 and the enactment of Section 223 of the Code of Civil Procedure, which I alluded to earlier.”
 

 Petitioner requested a stay of the trial proceedings to permit appellate review of the trial court’s ruling. We granted an immediate stay and issued
 
 *1172
 
 an alternative writ to consider the important interpretative questions presented.
 

 Discussion
 

 Section 223 provides, in pertinent part, that “Voir dire of any prospective jurors shall, where practicable, occur in the presence of the other jurors in all criminal cases, including death penalty cases.”
 
 [2]
 
 We must reconcile section 223 with the California Supreme Court’s decision in
 
 Hovey
 
 v.
 
 Superior Court, supra,
 
 28 Cal.3d 1.
 

 I.
 
 Hovey
 
 v.
 
 Superior Court
 

 We begin with
 
 Hovey.
 
 In
 
 Hovey,
 
 the petitioner sought to limit exclusions for cause of jurors unalterably opposed to the death penalty. The California Supreme Court rejected the proposed limitation but did impose a new requirement upon voir dire procedures in capital cases.
 
 (Hovey
 
 v.
 
 Superior Court, supra,
 
 28 Cal.3d at p. 69.)
 
 Hovey
 
 held that “this court declares, pursuant to its supervisory authority over California criminal procedure, [fn. omitted] that in future capital cases that portion of the voir dire of each prospective juror which deals with issues which involve death-qualifying the jury
 
 should be done individually and in sequestration.”
 

 [3]
 

 (28 Cal.3d at p. 80, italics added.)
 

 Hovey
 
 reasoned that jurors were influenced by observing the death qualification of their fellow venirepersons. By hearing repeated discussions of the death penalty before any evidence of guilt is presented, jurors may infer that the court and counsel assume the penalty phase will occur. (28 Cal.3d at pp.
 
 *1173
 
 70-71.) If a juror is predisposed to expect a guilty verdict, the juror may more readily believe the evidence constitutes proof beyond a reasonable doubt.
 
 (Id.
 
 at p. 72.)
 

 The exposure to the death qualification process may also make jurors more likely to impose the death penalty. For example, when the court dismisses persons who are unalterably opposed to the death penalty, remaining jurors may interpret the dismissal as a sign that the judge and law disapprove of such attitudes. Jurors whose beliefs about the death penalty are not so irrevocable as to disqualify them under
 
 Witherspoon
 

 [4]
 

 may believe their attitudes are improper or suspect. Consequently, those jurors may be less inclined to express or rely on such beliefs when choosing between life and death.
 
 (Hovey
 
 v.
 
 Superior Court, supra,
 
 28 Cal.3d at p. 74.) Jurors exposed to the death qualification process may also become desensitized to the intimidating duty of determining whether another person should live or die. “What was initially regarded as an onerous choice, inspiring caution and hesitation, may be more readily undertaken simply because of the repeated exposure to the idea of taking a life.”
 
 (Id.
 
 at p. 75.)
 

 In reaching its decision,
 
 Hovey
 
 relied upon a 1979 study involving 67 persons who viewed a simulated, videotaped voir dire. The 67 persons were randomly divided into 2 groups. One group was shown the full two-hour videotape which included thirty minutes of death qualification. The other group saw the same videotape but the death qualification segment was omitted. After viewing the videotapes, both groups completed a questionnaire. The responses were consistent with the prediction that exposure to death qualification alters the jurors’ perspectives to the detriment of the accused. (28 Cal.3d at pp. 75-79.)
 

 Accordingly,
 
 Hovey
 
 concluded that individual sequestered voir dire was the “most practical and effective procedure” to remedy the effects of the death qualification process.
 
 [5]
 
 (28 Cal.3d at p. 80.)
 
 Hovey
 
 reasoned that “. . . sequestered voir dire will minimize each juror’s exposure to the death-qualifying voir dire of others. It will thereby minimize the deleterious effects
 
 *1174
 
 of such exposure. Given the frailty of human institutions and the enormity of the jury’s decision to take or spare a life, trial courts must be especially vigilant to safeguard the neutrality, diversity and integrity of the jury to which society has entrusted the ultimate responsibility for life or death.”
 
 (Id.
 
 at p. 81.)
 

 The
 
 Hovey
 
 rule was announced pursuant to the California Supreme Court’s supervisory powers. It was not based upon constitutional grounds. This was “because the prejudicial effects associated with death-qualifying voir dire in open court had not been shown to be actual but only potential.”
 
 (People
 
 v.
 
 Anderson
 
 (1987) 43 Cal.3d 1104, 1135 [240 Cal.Rptr. 585, 742 P.2d 1306];
 
 People
 
 v.
 
 Cudjo
 
 (1993) 6 Cal.4th 585, 627 [25 Cal.Rptr.2d 390, 863 P.2d 635].)
 

 Hovey
 
 has not been overruled by the California Supreme Court and is still routinely referred to in California Supreme Court decisions. (See, e.g.,
 
 People
 
 v.
 
 Balderas
 
 (1985) 41 Cal.3d 144, 189 [222 Cal.Rptr. 184, 711 P.2d 480];
 
 People
 
 v.
 
 Freeman
 
 (1994) 8 Cal.4th 450, 482 [34 Cal.Rptr.2d 558, 882 P.2d 249, 31 A.L.R.5th 888];
 
 People
 
 v.
 
 Carpenter
 
 (1997) 15 Cal.4th 312, 358 [63 Cal.Rptr.2d 1, 935 P.2d 708].)
 

 II.
 
 Section 223
 

 Armed with an understanding of
 
 Hovey,
 
 we next examine section 223. In analyzing section 223, our duty is “to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.” (§ 1858.) If section 223 is unambiguous, then it must be applied according to its plain terms. Judicial interpretation is neither necessary nor permitted. (§ 1859;
 
 People
 
 v.
 
 Wells
 
 (1996) 12 Cal.4th 979, 985 [50 Cal.Rptr.2d 699, 911 P.2d 1374];
 
 Parris
 
 v.
 
 Zolin
 
 (1996) 12 Cal.4th 839, 845 [50 Cal.Rptr.2d 109, 911 P.2d 9].)
 

 By its plain terms, section 223 does not explicitly overrule
 
 Hovey.
 
 It does not state that there shall be
 
 no
 
 individual sequestered voir dire during the death qualification segment of a capital case. Section 223 does use the term “shall” and refers to “all criminal cases, including death penalty cases” but then undercuts the seemingly mandatory nature of those words with the phrase “where practicable.”
 

 Section 223’s reference to “where practicable” is not explained. The statute itself does not define what “where practicable” means. Nor does
 
 *1175
 
 section 223 list circumstances where conducting voir dire in the presence of all jurors would be impracticable.
 

 Petitioner contends the phrase “where practicable” represents a codification of
 
 Hovey.
 
 Amicus curiae, the Monterey County District Attorney’s office, essentially agrees with petitioner. The district attorney notes that if the drafters of section 223 had wanted to overrule Hovey, they would have done so explicitly. Real party in interest, the Attorney General, interprets section 223 as no longer requiring individual sequestered voir dire during death qualification but contends the matter is committed to the trial court’s discretion. Respondent county counsel argues section 223 overrules
 
 Hovey
 
 and also contends that large group voir dire is practicable in the circumstances of this case.
 

 Given these ambiguities, we must interpret section 223. In construing the statute, we shall ascertain the intent of the lawmakers so that we can effectuate the purpose of the law.
 
 (People
 
 v.
 
 Pieters
 
 (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr. 918, 802 P.2d 420].) “1 “[T]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.” ’ ”
 
 (Whitman
 
 v.
 
 Superior Court
 
 (1991) 54 Cal.3d 1063, 1072 [2 Cal.Rptr.2d 160, 820 P.2d 262], quoting
 
 People
 
 v.
 
 Pieters, supra,
 
 52 Cal.3d 894, 898-899.) “Similar rules would govern interpretation of measures adopted by initiative.”
 
 (Whitman
 
 v.
 
 Superior Court, supra,
 
 54 Cal.3d at p. 1072.) Consequently, we should try to give effect to the intent of the electorate in passing Proposition 115.
 
 (Bowens
 
 v.
 
 Superior Court
 
 (1991) 1 Cal.4th 36, 44 [2 Cal.Rptr.2d 376, 820 P.2d 600];
 
 Whitman
 
 v.
 
 Superior Court, supra,
 
 54 Cal.3d 1063, 1071.) In analyzing that intent, we may properly consider ballot materials and arguments in those materials.
 
 (Whitman
 
 v.
 
 Superior Court, supra,
 
 54 Cal.3d at p. 1072; see also
 
 Hill
 
 v.
 
 National Collegiate Athletic Assn.
 
 (1994) 7 Cal.4th 1, 19-22 [26 Cal.Rptr.2d 834, 865 P.2d 633];
 
 People
 
 v.
 
 Superior Court
 
 (Romero) (1996) 13 Cal.4th 497, 527 [53 Cal.Rptr.2d 789, 917 P.2d 628].)
 

 Section 223 was included as part of Proposition 115, the Crime Victims Justice Reform Initiative. Enacted in 1990, Proposition 115 was adopted to make “comprehensive reforms ... in order to restore balance and fairness to our criminal justice system.” (Ballot Pamp., Proposed Amends, to Cal. Const, with arguments to voters, Gen. Elec. (June 5, 1990) text of Prop. 115, § 1, subd. (a), p. 33.) The voters found “that it is necessary to reform the law as developed in numerous California Supreme Court decisions and as set forth in the statutes of this state. These decisions and statutes have unnecessarily expanded the rights of accused criminals far beyond that which is required by the United States Constitution, thereby unnecessarily adding to the costs of criminal cases, and diverting the judicial
 
 *1176
 
 process from its function as a quest for the truth.”
 
 (Id.,
 
 text of Prop. 115, § 1, subd. (b), p. 33; see also
 
 People
 
 v.
 
 Boulerice
 
 (1992) 5 Cal.App.4th 463, 474-475 [7 Cal.Rptr.2d 279].)
 

 In adopting Proposition 115, the voters expressly declared that their purposes were to “create a system in which justice is swift and fair, and to create a system in which violent criminals receive just punishment, in which crime victims and witnesses are treated with care and respect, and in which society as a whole can be free from the fear of crime in our homes, neighborhoods, and schools.” (Ballot Pamp., Proposed Amends, to Cal. Const, with arguments to voters, Gen. Elec. (June 5, 1990) text of Prop. 115, § 1, subd. (c), p. 33; see also
 
 Tapia
 
 v.
 
 Superior Court
 
 (1991) 53 Cal.3d 282, 292 [279 Cal.Rptr. 592, 807 P.2d 434];
 
 Bowens
 
 v.
 
 Superior Court, supra,
 
 1 Cal.4th at p. 44.) “Proposition 115 plainly contemplated the abrogation of
 
 [Hawkins
 
 v.
 
 Superior Court
 
 (1978) 22 Cal.3d 584 [150 Cal.Rptr. 435, 586 P.2d 916]] as well as other past decisions of this court.”
 
 (Bowens
 
 v.
 
 Superior Court, supra,
 
 1 Cal.4th at p. 45; see also
 
 Izazaga
 
 v.
 
 Superior Court
 
 (1991) 54 Cal.3d 356, 372 [285 Cal.Rptr. 231, 815 P.2d 304];
 
 Raven
 
 v.
 
 Deukmejian
 
 (1990) 52 Cal.3d 336, 348 [276 Cal.Rptr. 326, 801 P.2d 1077].)
 

 These statements reveal the general thrust of Proposition 115: to make comprehensive reforms, to create a system in which criminal justice is swift and fair, and to overrule past decisions of the California Supreme Court. Interpreting section 223 to abrogate
 
 Hovey
 
 would be consistent with Proposition 115’s general focus. This is because such an interpretation would reform the law, alter a past Supreme Court decision, and make justice more “swift” by eliminating the potentially time-consuming requirement of individual sequestered voir dire during death qualification. By contrast, interpreting section 223 to codify
 
 Hovey
 
 would not appear to further these goals.
 

 Turning to the ballot arguments, we see that the arguments mention neither
 
 Hovey
 
 nor its requirement that there be individual sequestered voir dire during death qualification. Of course, the ballot arguments clearly do not profess to describe Proposition 115 in its entirety but speak largely in generalities. For example, the arguments in favor of Proposition 115 include statements such as “Proposition 115 simply remedies gross inequities and will bring more violent criminals to justice.” (Ballot Pamp., Proposed Amends, to Cal. Const, with arguments to voters, Gen. Elec. (June 5, 1990) argument in favor of Prop. 115, p. 34.) Many of the arguments, both pro and con, are devoted to Proposition 115’s impact upon Californians’ right to privacy. The proposed changes in criminal law and procedure are not addressed in detail.
 

 
 *1177
 
 The statement by the Legislative Analyst also does not mention
 
 Hovey
 
 or its requirement of individual sequestered voir dire during death qualification. Although the statement does describe some of Proposition 115’s changes in criminal law and procedure, the analysis concedes that it only addresses “[t]he more important of these changes.” (Ballot Pamp., Proposed Amends, to Cal. Const, with arguments to voters, Gen. Elec. (June 5, 1990) analysis of Prop. 115 by the Legislative Analyst, p. 32.)
 

 Accordingly, our review of the ballot arguments and Legislative Analysis does not disclose any clear evidence of the electorate’s intent with regard to
 
 Hovey.
 
 With respect to the ballot arguments, the absence of such evidence is not particularly persuasive since the ballot arguments are largely rhetorical. The California Supreme Court recognized as much in
 
 Hill
 
 v.
 
 National Collegiate Athletic Assn., supra, 1
 
 Cal.4th 1, 22, footnote 5. The court cautioned, “Ballot arguments often embody the sound-bite rhetoric of competing political interests vying for popular support. However useful they may be in identifying the general evils sought to be remedied by an initiative measure, they are principally designed to win votes, not to present a thoughtful or precise explication of legal tests or standards.” Similarly, the failure of the Legislative Analyst to mention
 
 Hovey
 
 cannot be accorded too much weight since the analysis makes clear that it does not cover all subjects embraced by Proposition 115 but only summarizes the “more important of these changes.”
 
 [6]
 

 Because these materials do not disclose the electorate’s intent with regard to
 
 Hovey,
 
 we next examine the predecessor to current section 223. An understanding of the preinitiative scope of permissible voir dire in both capital and noncapital criminal cases may assist us in interpreting section 223. This is because “[t]he adopting body is presumed to be aware of existing laws and judicial construction thereof.”
 
 (In re Lance W.
 
 (1985) 37 Cal.3d 873, 890, fn. 11 [210 Cal.Rptr. 631, 694 P.2d 744]; see also
 
 Hill
 
 v.
 
 National Collegiate Athletic Assn., supra,
 
 7 Cal.4th at p. 22.)
 

 Before Proposition 115 was enacted, section 223 gave the trial court discretion in controlling voir dire. It provided, in pertinent part, that “In discharging its duties, the court shall have discretion and control with respect to the form and subject matter and duration of voir dire examination.” (Stats. 1988, ch. 1245, § 2, pp. 4148-4149.) Former section 223 also
 
 *1178
 
 stated that “(b) In each case it shall be the duty of the trial judge to provide for a voir dire process as speedy, focused, and informative as possible, and to protect prospective jurors from undue harassment and embarrassment and from inordinately extensive, repetitive, or unfocused examinations.” (Stats. 1988, ch. 1245, § 2, p. 4148.) Case law established that trial courts could, if necessary, require in camera voir dire of prospective jurors in circumstances other than death qualification. (See, e.g.,
 
 People
 
 v.
 
 Rutkowsky
 
 (1975) 53 Cal.App.3d 1069, 1073-1074 [126 Cal.Rptr. 104]; see also
 
 Odle
 
 v.
 
 Superior Court
 
 (1982) 32 Cal.3d 932, 936, fn. 2, 946, fn. 13 [187 Cal.Rptr. 455, 654 P.2d 225].) Such procedure was authorized pursuant to the trial court’s affirmative duty of selecting an impartial jury. (See, e.g., former Pen. Code, § 1078;
 
 People
 
 v.
 
 Crowe
 
 (1973) 8 Cal.3d 815, 828 [106 Cal.Rptr. 369, 506 P.2d 193];
 
 People
 
 v.
 
 Beyea
 
 (1974) 38 Cal.App.3d 176 [113 Cal.Rptr. 254].) Federal courts had permitted similar procedures (see, e.g.,
 
 United States
 
 v.
 
 Colabella
 
 (2d Cir. 1971) 448 F.2d 1299, 1303)
 
 [7]
 
 and the California Supreme Court had recognized that the courts “will uphold any method of
 
 voir dire
 
 which results in reasonable examination of prospective jurors.”
 
 (People
 
 v.
 
 Crowe, supra,
 
 8 Cal.3d at p. 821; see also
 
 People
 
 v.
 
 Dorsey
 
 (1974) 43 Cal.App.3d 953, 966 [118 Cal.Rptr. 362].)
 

 Consequently, prior to Proposition 115, individual sequestered voir dire was (1) required under
 
 Hovey
 
 during the death qualification process and (2) permitted in other circumstances pursuant to the trial court’s discretion over voir dire in criminal cases. This was the state of the law when the voters enacted Proposition 115, and with it, section 223’s requirement that “Voir dire of any prospective jurors shall, where practicable, occur in the presence of the other jurors in all criminal cases, including death penalty cases.”
 

 We believe section 223 was intended to overrule Hovey’s holding that individual sequestered voir dire is required during death qualification. If the electorate had intended to maintain Hovey’s requirement, we believe section
 
 *1179
 
 223 would say so in terms much more compelling than the current phraseology, which simply inserts the terms “where practicable” into the statute.
 
 [8]
 
 This is especially true given the state of law pre-Proposition 115. If current section 223 simply continues the state of the law pre-Proposition 115, thereby codifying
 
 Hovey,
 
 then the “where practicable” language must be read as both requiring individual sequestered voir dire in certain situations (death qualification) and merely permitting it in others. Besides requiring that “where practicable” mean two different things depending upon the context, this interpretation appears to us to be an especially inapt way of codifying existing law.
 

 Section 223’s explicit reference to “all criminal cases,
 
 including death penalty
 
 cases” also supports our conclusion. The statute could have been drafted to provide “Voir dire of any prospective jurors shall, where practicable, occur in the presence of the other jurors in all criminal cases.” However, section 223 specifically refers to death penalty cases. To us, the reference indicates that the trial court should inquire into the practicability of large group voir dire “in all criminal cases, including death penalty cases” rather than conduct no inquiry whatsoever with respect to the death qualification portion of voir dire. Certainly, the express mention of death penalty cases demonstrates that the electorate had capital cases in mind when Proposition 115 was adopted. And if death penalty cases were meant to be covered by section 223, then it seems fair to assume the electorate believed that in all criminal cases, including death penalty cases, it
 
 could
 
 be practicable to utilize large group voir dire.
 

 Amicus curiae, the district attorney, argues otherwise. The district attorney relies upon other parts of section 223 which do clearly abrogate prior California Supreme Court decisions. The district attorney argues that the absence of a similarly clear indication with respect to
 
 Hovey
 
 demonstrates that
 
 Hovey
 
 is still good law. For example, the district attorney refers to the second paragraph of section 223. It states “Examination of prospective jurors shall be conducted only in aid of the exercise of challenges for cause.” The quoted language was clearly directed at the holding in
 
 People
 
 v.
 
 Williams
 
 (1981) 29 Cal.3d 392 [174 Cal.Rptr. 317, 628 P.2d 869], which allowed voir dire in aid of the exercise of peremptory challenges. Indeed, in
 
 People
 
 v.
 
 Leung
 
 (1992) 5 Cal.App.4th 482, 493 [7 Cal.Rptr.2d 290], we acknowledged the statutory overruling of
 
 Williams.
 
 According to the district attorney, this demonstrates that the electorate knew how to abrogate Supreme Court rulings, and therefore reveals that
 
 Hovey
 
 was never intended to be overruled.
 

 
 *1180
 
 Our interpretation is different. If section 223 did not include the phrase “where practicable” and simply stated, “Voir dire of any prospective jurors shall occur in the presence of the other jurors in all criminal cases, including death penalty cases” then it would be obvious that
 
 Hovey
 
 had been abrogated. In that case, the situation would be similar to that in Williams. However, if the “where practicable” language was omitted, it would also be true that individual sequestered voir dire would
 
 never
 
 be permitted in any criminal case, no matter what the circumstances. The words “where practicable” represent a compromise from this extreme. At the same time, the juxtaposition of the phrase “where practicable” with the deliberate use of the terms “shall” and “all criminal cases, including death penalty cases” convinces us that section 223’s drafters intended to vest the trial court with discretion to determine the practicability of large group voir dire in
 
 all
 
 circumstances, including death qualification.
 

 We realize that there are often more artful ways to phrase a statute and that the fact that a statute could be more clearly worded does not necessarily foreclose a particular interpretation. However, petitioner’s argument that section 223 codifies
 
 Hovey
 
 merely because the phrase “where practicable” was included is simply not persuasive. The words “where practicable” are not, in our view, nearly compelling enough to support petitioner’s interpretation. The argument that section 223 codifies
 
 Hovey
 
 because the ballot arguments and Legislative Analyst statement do not mention
 
 Hovey
 
 is also not convincing because, as we have already discussed, those materials were never meant to be comprehensive descriptions of Proposition 115’s scope. Finally, the
 
 Hovey
 
 rule was announced pursuant to the California Supreme Court’s supervisory powers; it was not a statutory or constitutional requirement. Nonetheless, the drafters of section 223 deliberately decided to include the reference to voir dire in the presence of all jurors. We believe that fact, along with the fact that the general thrust of Proposition 115 was to reform the law, is indicative of an intent to abrogate
 
 Hovey,
 
 rather than an intent that it be codified.
 

 The conclusion that the phrase “where practicable” vests the trial court with discretion in all circumstances, rather than vesting the trial court with discretion only in circumstances not involving death qualification, is also supported by other language within section 223. The last sentence of section 223 states, “The trial court’s exercise of its discretion in the manner in which voir dire is conducted shall not cause any conviction to be reversed unless the exercise of that discretion has resulted in a miscarriage of justice, as specified in Section 13 of Article VI of the California Constitution.” It is a fundamental rule of statutory construction that words of a statute must be construed in context, keeping in mind the statutory purpose. Statutory sections relating to the same subject must be harmonized to the extent
 
 *1181
 
 possible.
 
 (Dyna-Med, Inc.
 
 v.
 
 Fair Employment & Housing Com.
 
 (1987) 43 Cal.3d 1379,1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Deciding that the phrase “where practicable” vests the trial court with discretion in all circumstances comports with section 223’s provision regarding the trial court’s “exercise of its discretion in the manner in which voir dire is conducted . . . .”
 

 Other commentators are in accord with our conclusion. For example, in summarizing the arguments against Proposition 115 and section 223, the Criminal Law Section of the State Bar of California interpreted section 223 as altering
 
 Hovey.
 
 The comments state that “by mandating that voir dire shall occur in the presence of other jurors, the change will prevent jurors from freely expressing their personal beliefs on an individual case and relating information that is embarrassing. It is particularly important in death penalty cases that jurors feel free to express their personal views. The right to engage in private questioning of jurors should not require an additional showing of ‘impracticability.’ ” (Crim. Law News (June 1990) p. 8.) Another commentator stated that “The portion [of section 223] regarding the presence of other jurors during voir dire cancels the ruling in
 
 Hovey. . .
 
 .” (Suarez, Crime Victims Justice Reform Act of 1989, An Analysis, Office of the Public Defender, City and County of San Francisco, p. 14.) A Joint Analysis of Proposition 115 prepared by the Senate Committee on Judiciary and Assembly Public Safety Committee states, “It is unclear whether [section 223] would abrogate die holding in
 
 Hovey
 
 .... It could be argued that
 
 Hovey
 
 renders such questioning ‘impracticable.’ ” (P. 59.) Although petitioner emphasizes this report, it can hardly be viewed as a striking endorsement of petitioner’s argument.
 
 [9]
 

 Our conclusion that section 223 abrogates
 
 Hovey
 
 is consistent with the general thrust of Proposition 115, seems less strained than the interpretation urged by petitioner, requires the trial court to consider the practicability of large group voir dire in all criminal cases, including death penalty cases and the death qualification process occurring therein, is logical given the state of the law pre-Proposition 115, and is consistent with the overall statutory scheme. For all these reasons, we hold that section 223 abrogates Hovey's requirement of individual sequestered voir dire during death qualification.
 

 
 *1182
 
 III.
 
 Trial Court’s Decision
 

 Having so concluded, we next consider that conclusion in the context of this case. Petitioner argues that large group voir dire is impracticable in this situation for the reasons expressed in
 
 Hovey
 
 and because the case involved a multiple murder which generated a great deal of publicity within the community. Petitioner states that there was additional publicity because petitioner was captured and returned to the United States by bounty hunters after he fled to Mexico. Petitioner notes that some courts have made it a practice to utilize individual sequestered voir dire in similar circumstances. (See, e.g.,
 
 Odie
 
 v.
 
 Superior Court, supra,
 
 32 Cal.3d 932, 936, fn. 2, 946, fn. 13.) Petitioner therefore asks us to grant his petition for mandate. He requests that we compel the trial court to engage in individual sequestered voir dire.
 

 As already discussed, under section 223, individual sequestered voir dire is no longer required during death qualification. Individual sequestered voir dire is still permissible, either during death qualification or in other circumstances, if the trial court determines that large group voir dire is impracticable.
 

 Whether large group voir dire is practicable in petitioner’s case is not for us to decide. That issue is for the trial court. “Mandamus will not lie to control an exercise of discretion, i.e., to compel an official to exercise discretion in a particular manner.”
 
 (Common Cause
 
 v.
 
 Board of Supervisors
 
 (1989) 49 Cal.3d 432, 442 [261 Cal.Rptr. 574,
 
 777
 
 P.2d 610], citing
 
 Shepherd
 
 v.
 
 Superior Court
 
 (1976) 17 Cal.3d 107, 118 [130 Cal.Rptr. 257, 550 P.2d 161];
 
 Anderson
 
 v.
 
 Phillips
 
 (1975) 13 Cal.3d 733, 737 [119 Cal.Rptr. 879, 532 P.2d 1247].)
 

 “Mandamus will lie to compel a public official to perform an official act required by law. (Code Civ. Proc., § 1085.)”
 
 (Common Cause
 
 v.
 
 Board of Supervisors, supra,
 
 49 Cal.3d 432, 442, citing
 
 Shepherd
 
 v.
 
 Superior Court, supra,
 
 17 Cal.3d 107, 118;
 
 Anderson
 
 v.
 
 Phillips, supra,
 
 13 Cal.3d 733, 737.) It can be presumed that an official duty has been regularly performed and that the law has been obeyed. (Evid. Code, §§ 664, 666.) However, if it appears that an official has failed to exercise his or her discretion, then mandamus is a proper remedy. “Mandamus may issue ... to compel an official both to exercise his [or her] discretion (if he [or she] is required by law to do so) and to exercise it under a proper interpretation of the applicable law.”
 
 (Common Cause
 
 v.
 
 Board of Supervisors, supra,
 
 49 Cal.3d 432, 442, citing
 
 Shepherd
 
 v.
 
 Superior Court, supra,
 
 17 Cal.3d 107, 118;
 
 Anderson
 
 v.
 
 Phillips, supra,
 
 13 Cal.3d 733, 737.)
 

 In this case, the trial court described its decision to deny individual sequestered voir dire as follows. The court stated that it had “reviewed
 
 *1183
 
 carefully all of the authorities cited by counsel for both sides in their motions concerning the voir dire process, and the defense request for individual and sequestered voir dire.” The court then stated that it “has reviewed the authorities in this area and has determined that individual and sequestered voir dire is not only not required, but that the lawful process and the best process is to conduct voir dire whenever possible in the presence of other jurors.” The court further explained that “. . . while it is true that the
 
 Hovey
 
 case has not been specifically overruled by another case, another California Supreme Court case, it has been effectively overruled with the enactment of Proposition 115 and the enactment of Section 223 of the Code of Civil Procedure, which I alluded to earlier.”
 

 We do not believe the trial court’s comments reflect an exercise of discretion about whether, in the particular circumstances of this case, large group voir dire was practicable. Although we agree with the trial court’s finding that section 223 abrogates
 
 Hovey,
 
 the trial court seemed to be focused upon the fact that individual sequestered voir dire was no longer
 
 required,
 
 rather than engaging in a careful consideration of the practicability of large group voir dire as applied to petitioner’s case. This seems especially evident given the trial court’s repeated emphasis upon its review of “the authorities.” Those authorities may have supported the trial court’s interpretation of section 223 with respect to
 
 Hovey,
 
 but the trial court’s emphasis upon them indicates that the court did not thoroughly examine the application of section 223 to the specific circumstances before it.
 

 The trial court’s statement that individual sequestered voir dire is “not only not required” but that conducting voir dire in the presence of the other jurors is the “best process” and “the lawful process” also demonstrates the trial court’s misunderstanding of section 223. Depending upon the circumstances, conducting voir dire in the presence of the other jurors may or may not be the “best process.” Certainly the trial court misapprehended section 223 to the extent its description of large group voir dire as “the lawful process” implied that individual sequestered voir dire was somehow unlawful.
 

 Further, in this case, both petitioner
 
 and
 
 the district attorney sought individual sequestered voir dire. Both parties agreed individual sequestered voir dire was appropriate. Yet despite that fact, the trial court never indicated that the particular circumstances of the case caused it to reject a procedure upon which both sides had agreed.
 

 The trial court’s reference to utilizing large group voir dire “whenever possible” does not alter our view. The words “possible” and “practicable”
 
 *1184
 
 have different meanings. Webster’s defines “practicable” as “capable of being put into practice or being done or accomplished: Feasible.” (Webster’s New Collegiate Dict. (9th ed. 1984) p. 923; see also
 
 Pacific Employers Ins. Co.
 
 v.
 
 Superior Court
 
 (1990) 221 Cal.App.3d 1348, 1356 [270 Cal.Rptr. 779].) The distinction between the two terms was highlighted in
 
 Wilson
 
 v.
 
 Ostly
 
 (1959) 173 Cal.App.2d 78, 84 [343 P.2d 349]. In that case, the court reasoned: “The basic fallacy of appellant’s argument lies in his failure to recognize the substantial difference between the words ‘practicable’ and ‘possible.’ ”
 
 (Ibid.)
 
 The
 
 Wilson
 
 court concluded that the word “practicable” meant the official body was “vested with a discretion to consider the advisability” of requirements under the County Charter.
 
 (Id.
 
 at p. 85.)
 

 Similarly, section 223 vests the trial court with discretion to determine the advisability or practicability of conducting voir dire in the presence of the other jurors. Accordingly, a finding that large group voir dire should be utilized “whenever possible” does not comport with section 223’s description of the trial court’s duty to decide whether such voir dire was in fact practicable.
 

 In sum, the fact that the trial court denied petitioner’s request because it determined that section 223 overruled
 
 Hovey,
 
 rather than because it determined that large group voir dire was practicable in petitioner’s case, seems clear from the overall tenor of the court’s comments. Accordingly, we conclude that the trial court failed to exercise its discretion to determine the practicability in petitioner’s case of conducting voir dire in the presence of the other jurors.
 

 Disposition
 

 Let a peremptory writ of mandate issue directing the trial court to exercise its discretion to decide whether it is practicable in petitioner’s case to conduct voir dire in the presence of other jurors. In all other respects, the requested relief is denied.
 

 Wunderlich, J., and Mihara, J., concurred.
 

 Petitioner’s application for review by the Supreme Court was denied April 22,1998. Kennard, J., was of the opinion that the petition should be granted.
 

 [1]
 

 All further unspecified statutory references are to the Code of Civil Procedure.
 

 [2]
 

 Section 223 provides, in its entirety, “In a criminal case, the court shall conduct the examination of prospective jurors. However, the court may permit the parties, upon a showing of good cause, to supplement the examination by such further inquiry as it deems proper, or shall itself submit to the prospective jurors upon such a showing, such additional questions by the parties as it deems proper. Voir dire of any prospective jurors shall, where practicable, occur in the presence of the other jurors in all criminal cases, including death penalty cases. [5Q Examination of prospective jurors shall be conducted only in aid of the exercise of challenges for cause. [<][] The trial court’s exercise of its discretion in the manner in which voir dire is conducted shall not cause any conviction to be reversed unless the exercise of that discretion has resulted in a miscarriage of justice, as specified in Section 13 of Article VI of the California Constitution.”
 

 [3]
 

 “Death qualification” refers to “a determination whether each prospective juror had such conscientious or religious scruples about capital punishment that would ‘prevent or substantially impair the performance of his [or her] duties as a juror in accordance with his [or her] instructions and his [or her] oath.’ ”
 
 (People
 
 v.
 
 Lucas
 
 (1995) 12 Cal.4th 415, 479 [48 Cal.Rptr.2d 525, 907 P.2d 373], quoting
 
 Adams
 
 v.
 
 Texas
 
 (1980) 448 U.S. 38, 45 [100 S.Ct. 2521, 2526, 65 L.Ed.2d 581]; see also
 
 Wainwright
 
 v.
 
 Witt
 
 (1985) 469 U.S. 412, 424 [105 S.Ct. 844, 852, 83 L.Ed.2d 841].)
 

 [4]
 

 In
 
 Witherspoon
 
 v.
 
 Illinois
 
 (1968) 391 U.S. 510 [88 S.Ct. 1770,20 L.Ed.2d 776], the United States Supreme Court decided that the only prospective jurors who could be excused for cause due to their opposition or doubts about capital punishment were “those who made unmistakably clear (1) that they would
 
 automatically
 
 vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant’s
 
 guilt.” (Id.
 
 at pp. 522-523, fn. 21 [88 S.Ct. at p. 1777], original italics.)
 

 [5]
 

 Hovey
 
 emphasized that “This rule will not in any way affect the open nature of a trial. Although trial counsel or the court may pose general questions to the panel, the venirepersons should not respond to any questions beyond those routinely asked in any criminal trial until
 
 *1174
 
 they are outside the presence of their fellow venirepersons.”
 
 (,Hovey
 
 v.
 
 Superior Court, supra,
 
 28 Cal.3d at pp. 80-81.)
 

 [6]
 

 Whether or not one believes the abrogation of
 
 Hovey
 
 is an “important change,” it is clear that we do not know the criteria the Legislative Analyst used to decide what changes were worth mentioning. Given that fact, and the fact that the analysis recognizes that it does not describe all of Proposition 115’s changes, it would be precipitous to read the analyst’s silence about
 
 Hovey
 
 as compelling Hovey’s retention.
 

 [7]
 

 Rule 24(a) of the Federal Rules of Criminal Procedure (18 U.S.C.) reads as follows: "Rule 24. Trial Jurors [f| (a) Examination. The court may permit the defendant or the defendant’s attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or the defendant’s attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper.” Many federal courts have interpreted this rule as giving the district court discretion to conduct individual sequestered voir dire. (See, e.g., Annot. (1976) 28 A.L.R.Fed 26.) It has also been acknowledged that section 223 is modeled after rule 24(a).
 
 (People
 
 v.
 
 Taylor
 
 (1992) 5 Cal.App.4th 1299, 1308 [7 Cal.Rptr.2d 676].)
 

 [8]
 

 For example, had section 223 meant to codify
 
 Hovey,
 
 a better and more natural phrasing might have been, “Voir dire of any prospective jurors shall, where practicable, occur in the presence of the other jurors in all criminal cases, except during the death qualification portion of a death penalty case.”
 

 [9]
 

 The Attorney General requested that we take judicial notice of these materials. As is apparent above, we have decided to do so. In addition, we note that Witkin and Epstein commented upon section 223. They stated, “The phrase ‘where practicable’ is not defined in the initiative, but the new provision is apparently aimed at the requirement of
 
 Hovey. . .
 
 that sequestered voir dire be conducted during the death qualification of prospective jurors in capital cases.” (5 Witkin & Epstein, Cal. Criminal Law (1997 supp.) Trial, § 2846A, p. 194.) It is difficult to discern from these comments whether Witkin believed section 223 abrogated
 
 Hovey.