[No. A021746. First Dist., Div. One. June 25, 1985.]

CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Appellant, v. MARY I. CALLANAN, as City Treasurer, etc., et al., Defendants and Respondents.

## COUNSEL

George Agnost, City Attorney, Burk E. Delventhal and Thomas J. Owen, Deputy City Attorneys, for Plaintiff and Appellant.

Jamie O. Harris and Julian D. Rhine for Defendants and Respondents.

## OPINION

**RACANELLI, P. J.**—This appeal concerns the validity of legislation enacted by the Board of Supervisors of the City of San Francisco authorizing the payment of benefits to the surviving dependents of an assassinated elected public official. Our analysis of the relevant charter provisions compels a conclusion that the action of the board is expressly prohibited under the terms of the charter. Accordingly, we determine the ordinance to be void and unenforceable.

On November 27, 1978, Mayor George Moscone and Supervisor Harvey Milk were assassinated. The mayor was survived by his widow and minor children. Supervisor Milk died without any surviving dependents. On April 16, 1979, the board adopted ordinance No. 175-79, entitled "Assassination Survivorship Fund." (S.F. Admin. Code, § 16.600 et seq.) The ordinance establishes a special fund designating the city treasurer as trustee, from which periodic sums are to be drawn by warrants of the city controller payable to the eligible survivors of the designated elected public official killed by assassination. The ordinance is retroactive to assassinations which occur after November 15, 1978.

Both the city treasurer and controller challenge the validity of the ordinance and refuse to perform the acts required under the ordinance. The city acting through the board petitioned the superior court for a writ of mandate to compel performance of the required duties. Following a brief trial, the court issued its statement of decision denying the petition, concluding that the city charter expressly limited the power of the board to enact an ordinance dealing with pension, retirement or death benefits or other benefits of employment.

On appeal, the city structures a creative argument based upon findings of the detrimental effect of the risks of assassination upon elected officials

apprehensive about the well-being of surviving dependents.[1] The city maintains that the ordinance fills a political vacuum in the charter as a "security measure" designed to assure uncompromised performance of duty by relieving the official's family concerns in the event of assassination in office. The fact that the means selected to accomplish that objective is a monetary death allowance should not, the city insists, be allowed to thwart the valid exercise of the board's legislative power in the public interest. Respondents forcefully counter by pointing to specific charter provisions sharply limiting the board's power in the area of employment benefits.

■■■ The sole issue to be decided is whether the board's enactment of the special fund was invalid under the terms of the city charter. Accordingly, we examine the relevant provisions of the charter guided by established precedent and principles of construction.

### 1. *Charter provisions relating to employee benefits.*

Article VIII of the city charter deals exclusively with the rights and obligations of city officers and employees. Chapter four of that article contains a number of provisions regulating wages and other forms of compensation, including health benefits, vacation accruals and reimbursement for expenses.

Under section 8.400 of chapter four, the board is expressly empowered to fix all salaries, wages and compensation of every kind, except pension or retirement allowances, for all officers and employees of the city. Section 8.401, which applies to all officers and employees (with certain exceptions not relevant herein), provides a detailed formula by which the board is to fix salary schedules in accordance with generally prevailing wage rates for comparable services in the private or public sector. Section 8.407, which

---

[1]The special findings set out in the ordinance recite:

"(a) Threats and aggressions against elected public officials often arise from dissatisfaction with the lawful discharge by said officials of their public duties;

(b) though every reasonable precaution may be taken, the nature of elective office requires unusual exposure to danger;

(c) therefore, elected public officials bear an unusual risk of assassination;

(d) elected public officials who are threatened by assassination at the hands of those who are dissatisfied with the lawful discharge of their public duties must be concerned for the welfare of surviving dependents;

(e) elected public officials who are concerned for the welfare of surviving dependents will necessarily be deterred from the full and uncompromised exercise of duty;

(f) to the extent that elected public officials are deterred from the vigorous discharge of their duties, the public welfare is impaired; and

(g) therefore, the public welfare is furthered by ensuring that elected public officials may discharge their duties as trustees of the people's sovereign powers without fear for the well-being of their surviving dependents."

defines the prevailing wage rates standard, contains the following significant restriction on the power of the board:

"It is the declared intent of the qualified electors of the city and county that *the board of supervisors has no power to provide any benefits of employment except those already provided for in the charter and any addition, deletion or modification of benefits of employment shall be submitted, as a charter amendment, to the qualified electors of the city and county.* The qualified electors expressly state that they understand that benefits of employment are sometimes referred to as fringe benefits of employment and the qualified electors expressly reserve the right to either grant or deny such benefits except those conditions of employment commonly referred to as working conditions."[2] (Italics added.)

While the charter provides for a death allowance to the surviving spouses of police and fire personnel, no similar allowance is made for elected officials. (San Francisco City Charter, art. VIII, ch. 5, §§ 8.548, 8.561, 8.585-4.) However, a death benefit equal to the compensation which would be earned by a member of the city retirement system for the six months preceding death *from any cause* is provided under section 8.509, subdivision (e).[3]

### 2. *Effect of the charter provision on Ordinance No. 175-79.*

Preliminarily, we discuss briefly the issue of the city's standing to sue. Mandamus has long been recognized as an appropriate means by which to challenge a city official's refusal to implement a duly enacted legislative measure and to secure a determination of the validity of the questioned legislation. (*City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 911 [120 Cal.Rptr. 707, 534 P.2d 403]; *City of Roseville* v. *Tulley* (1942) 55 Cal.App.2d 601, 603-604 [131 P.2d 395] [city authorized to institute proceedings to compel city treasurer to pay warrants approved by city council].)

It is axiomatic that a city charter "operates not as a grant of power, but as an instrument of limitation and restriction on the exercise of power over all municipal affairs which the city is assumed to possess; . . . [Cita-

---

[2]The "working conditions" exception requires certification by the civil service commission that the condition is necessary and is provided to a majority of the employees covered in the salary survey. No evidence was submitted to the trial court that the exception applied herein.

[3]It appears that Mayor Moscone's surviving wife received the benefits payable under this section in addition to workers' compensation death benefits.

tions.]" (*City of Grass Valley* v. *Walkinshaw* (1949) 34 Cal.2d 595, 598-599 [212 P.2d 894].) Any restriction on the exercise of sovereign power must be explicit in the charter and may not be implied. (*Id.,* at p. 599.) Enumeration of specified powers does not result in the exclusion of powers not otherwise specified. (*West Coast Adver. Co.* v. *San Francisco* (1939) 14 Cal.2d 516, 523 [95 P.2d 138].) ■ Thus, a limitation on the power to impose license taxes on specified businesses does not limit the power with reference to other businesses. (*Id.,* at p. 526.)

In *DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11 [194 Cal.Rptr. 722], the court considered a charter provision which prohibited sales of city land without voter ratification. The charter allowed leases of city land with approval of the city council for leases in excess of one year but prohibited leases for a term greater than fifteen years. Applying the rules of charter construction derived from *City of Grass Valley* and kindred cases, the court determined that the express restriction on the city's power to sell public lands did not result in an implied restriction on the city's power to lease such lands beyond 15 years, at least where approved by the city council and ratified by the voters. (*Id.,* at p. 19)

■ Here, however, the charter provision flatly declares that the board has "no power to provide any benefits of employment" except as therein provided or by charter amendment. We understand City's argument to be that the ordinance does not provide a benefit of employment but merely establishes a security measure no different in effect than authorizing a security force to protect elected officials against the risks of assassination. Our understanding of the unusual argument, however, does not include acceptance of its tenuous logic.

The terms "benefits of employment" are not defined in the charter except for the brief comment in section 8.407 which declares that benefits of employment are often referred to as "fringe benefits." ■ A conventional definition of the colloquial phrase generally means "an employment benefit (as a pension, a paid holiday, or health insurance) granted by an employer that involves a money cost without affecting basic wage rates." (Webster's Third New International Dictionary (1961) p. 912.) In *Trinity Services, Inc.* v. *Marshall* (D.C.Cir. 1978) 593 F.2d 1250, the court examined a variety of fringe benefits mandated in federal projects under the Federal Service Contract Act (41 U.S.C. § 351 (a)(2)) and distilled the following common characteristics: "[That is,] to provide the benefit, the employer must make a payment to the employee (or to a fund maintained in the employee's behalf) for the present or future use of the employee (or his beneficiary), allow the employee to accrue some form of deferred compensation (such as vacation time), or incur the risk of granting the benefit to the employee (or

his beneficiary) at some future time (such as compensation for injuries or illness from occupational activity)." (*Id.,* at p. 1257, fn. omitted.)

Unquestionably, the allowance provided under the special ordinance requires the city employer to incur a risk of bestowing future benefits on a designated class of beneficiaries within the generally understood meaning and definition of a "fringe benefit." Other provisions of the charter dealing with collateral benefits of employment fortify that interpretation: death allowances for fire and police personnel are treated as employment benefits under the provisions of the retirement plan chapter of the charter; and death benefits payable upon the death of other employees from any cause are similarly found in that chapter.

Seizing upon the introductory language of section 8.407 which refers to generally prevailing wage rates "for those employees covered by section 8.401," the city then argues that section 8.407 is limited to "employees" as distinguished from "officers" of the city. We disagree. Section 8.401 unequivocally states that it applies to *all officers and employees.* Moreover, the restriction imposed on the powers of the board under section 8.407 relates not to employees or officers, but to "any benefits." To submit to the city's interpretation of the charter would result illogically in a definition of generally prevailing wage rates confined to "employees" alone while excluding "officers" who are nonetheless expressly subject to the salary standardization provisions of section 8.401. There is no showing on the record before us to indicate that the city has ever applied a different definition of salary and wage rates for its officers. Thus, the conclusion is inescapable that the restrictive language contained in section 8.407 applies uniformly to all benefits of employment of both officers *and* employees.

Finally, the city contends that the benefits provided by the Assassination Survivorship Fund are intrinsically different from pension or retirement benefits because of the absence of any required linkage either with service longevity or salary rank at the time of death. While the elected official cannot designate the intended beneficiary of the death allowance (as in the case of traditional retirement plans), such distinction—at most—merely removes the benefits provided from classification as deferred compensation. (See *Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 852 [179 P.2d 799].) It does not, however, remove such benefits from the inclusive category of "benefits of employment" which can only be altered by a charter amendment approved by the electorate. (San Francisco Charter, § 8.407.)

In summary, we find it difficult to contemplate a more explicit restriction on the power of the board to provide for employment benefits than that so lucidly expressed in section 8.407. The seam in the city's argument unravels

in its confusion between the *purpose* of the legislation and the *means* intended to accomplish that purpose. Although the charter, arguably, does not limit the board's power to address the ominous spectre of assassination attempts through preventive measures such as the provision of security police, metal detectors at public meeting places, or other appropriate devices, the board is not empowered to use any means—in this case special benefits of employment—expressly precluded under the charter. Any other construction would render the prohibitory language of section 8.407 meaningless. If legislative purpose alone, however commendable, is all that were required to justify payment of special employment benefits, then conceivably the board would be empowered to grant any number of additional benefits without restriction in complete disregard of the will of the electorate as expressed in the charter. Clearly, this is not the intent or purpose of the charter provision reserving the right to grant such benefits to the electorate.

In view of our determination, it is unnecessary to discuss other arguments relating to the validity of the ordinance.

Judgment affirmed.

Elkington, J., and Holmdahl, J., concurred.