Filed 1/3/14  In re S.M. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.M. et al., Persons Coming Under the Juvenile Court Law. | H039570 (Santa Clara County Super. Ct. Nos. JD18636, JD18637) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. S.P., Defendant and Appellant. | |

S.P. (mother) appeals from an order denying her Welfare and Institutions Code section 388 petition and terminating her parental rights.[1]  Mother's section 388 petition sought the return of two of her children--J.O. and S.M.--or, alternatively, reunification services.  The petition also requested that the court order J.O. to attend visitation with mother.  The juvenile court denied mother's section 388 petition following an evidentiary hearing.  Immediately thereafter, the court held a section 366.26 hearing to determine permanent plans of care for the children, after which it terminated mother's parental rights.

On appeal, mother contends the juvenile court abused its discretion by denying her

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

section 388 petition because she carried her burden of proof to show that changed circumstances warranted her requests to promote the best interest of the children. We disagree and shall affirm the order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mother has five children and a history of drug addiction and drug-related convictions. This case, the fourth dependency case involving mother and one or more of her children, involves her two youngest children, J.O. and S.M.

### A. *Prior Dependency Cases*

In 1995, mother's oldest child, D.S., was declared a dependent child at the age of one because of mother's substance abuse and neglect. Mother reunified with D.S. in 1998, after completing a court-ordered drug treatment program in connection with a misdemeanor drug conviction, and the dependency case was dismissed.

In 2000, mother was again convicted of a drug offense and was ordered into a drug treatment program. Her three oldest children were declared dependents of the juvenile court at that time due to mother's substance abuse and neglect. Following two years of court-ordered substance abuse services, mother reunified with the children and the second dependency case was dismissed.

Shortly after the reunification in 2002, mother left the three oldest children in the care of their maternal grandmother, who used drugs and physically abused the children. In 2007, the maternal grandmother was arrested on multiple drug charges. In 2008, all five of mother's children were adjudicated dependents of the court. After mother successfully completed inpatient and outpatient drug treatment, the children were returned to her and the third dependency case was dismissed.

### B. *Mother's 2012 Arrest and Initiation of the Current Dependency Case*

Mother was arrested on April 11, 2012, for probation violations related to drug convictions. At that time, mother left eight-year-old J.O. in the care of a maternal aunt and five-year-old S.M. in the care of his paternal grandparents.

2

Mother was released a few weeks later and was ordered to drug test regularly and enroll in an outpatient drug treatment program. Mother subsequently missed one drug test and tested positive for methamphetamines at another; she was remanded into custody on May 21, 2012. Mother remained incarcerated until June 28, 2012, when she was released to a drug treatment facility. Less than a month later, on July 24, mother was expelled from the drug treatment facility for threatening other residents. She was remanded into custody on August 1, 2012.

In the meantime, the maternal aunt and paternal grandparents filed for probate guardianship of J.O. and S.M., respectively. The probate court referred both cases to the Santa Clara County Department of Family and Children's Services (Department) for investigation. In the summer of 2012, the Department filed juvenile dependency petitions on behalf of J.O. and S.M.

The children were detained by the juvenile court, and placed into the care of the maternal aunt and paternal grandparents. The court ordered weekly visitation with mother, with the caveat that the children should not be forced to visit mother against their will. Throughout the summer, both children refused to visit mother when they were asked each week.

During an interview in July 2012, J.O. told the social worker that he did not want to live with mother because she used drugs. He stated that mother sold his clothes and shoes for drugs and forced him and S.M. to sleep in a closet. He also reported that there was no food in mother's home so he and his siblings go hungry. His maternal aunt, with whom he is living, told the social worker that mother sold her food stamps to get money for drugs.

In August of 2012, S.M. told the social worker that he did not want to live with mother because he had seen her use drugs and do "nasty things" with his "fake dad." He also said that she does "crazy things" like running around, hitting stuff, and grabbing a knife. S.M. said there was no food in mother's house. He also said he did not feel safe

3

with mother.  As noted above, S.M. declined weekly visits with mother in August and September, but beginning in October 2012, S.M. agreed to visit with mother.  The weekly visits reportedly went well.

### C.    *Order Removing J.O. and S.M. from Mother's Custody and Denying Reunification Services*

On October 26, 2012, the juvenile court took jurisdiction over J.O. and S.M. and ordered that reunification services not be provided.  The court found that such services would not be in the children's best interest in view of mother's "history of extensive, abusive and chronic use of drugs" and her resistance to court-ordered drug treatment.  The court ordered weekly supervised therapeutic visitation between mother and the children, but again ordered that the children not be forced to visit.  A section 366.26 hearing to select a permanent plan for the children was set for February 13, 2013.  That hearing eventually was continued until April 25, 2013.

### D.    *Mother's Section 388 Petition*

Mother filed a section 388 petition on March 27, 2013, requesting modification of the court's October 26, 2012 orders.  Specifically, she requested return of J.O. and S.M. or six months of reunification services, increased visitation and therapy with both children, and that visitation be made mandatory for J.O.  The court set the section 388 petition to be heard on April 25, 2013, immediately before the contested section 366.26 hearing.

### E.    *Section 388 Petition and Section 366.26 Hearings*

At the evidentiary hearing on mother's section 388 petition, mother testified that she had been sober for 11 months, attended Narcotics Anonymous meetings daily, had a sponsor, and was serious about her recovery.  She admitted that she had completed drug treatment programs on multiple prior occasions and had been clean for as long as three years in the past, but stated that she did not have a sponsor or attend Narcotics Anonymous meetings that time.

4

One of mother's long-time friends and fellow Narcotics Anonymous members testified as to mother's sobriety and frequent attendance of Narcotics Anonymous meetings. Mother's sponsor testified that she had sponsored mother for four months and that mother was on the first of the 12 steps.

Following the evidentiary hearing, the juvenile court denied the petition. The court found that there were changed circumstances but concluded that reunification services were not in the children's best interests in light of their ages, that they were in loving homes, and their need for permanency and consistency.

The juvenile court admitted into evidence section 366.26 reports regarding J.O. and S.M., which recommended termination of mother's parental rights and adoption by the maternal aunt and paternal grandparents, respectively. The reports indicated that the children's respective relative caregivers were committed to adopting them. J.O.'s section 366.26 report indicated that he consistently refused visits with mother, said he did not want to live with her, teared up when he was asked about visiting mother, and suffered from anxiety related to the possibility of visiting mother. The report also stated that J.O. viewed his aunt and uncle as his parents and that he wanted to live with them permanently. S.M.'s report stated that he viewed his grandparents as parental figures.

Following argument by counsel, the juvenile court terminated mother's parental rights and freed the children for adoption. Judgment was entered on April 25, 2013.

Mother timely appealed from the denial of her section 388 petition and the order terminating her parental rights on April 26, 2013.

## II.  DISCUSSION

On appeal, mother contends the juvenile court erred by denying her section 388 petition request for reunification services, arguing she demonstrated that such services were in the children's best interests. In support of that argument, she points to evidence that she had been sober for 11 months, is caring for her three older children, and that her visits with S.M. have gone well. Mother also maintains that the court erred by not

5

ordering J.O. to attend therapeutic visits with her as requested in her section 388 petition.

### A. *Standard of Review*

Section 388 permits any person having an interest in the child to petition for a hearing to change, modify, or set aside any court order previously made on grounds of change of circumstance or new evidence. (*In re Lesly G*. (2008) 162 Cal.App.4th 904, 912.) Such a motion requires the petitioner to demonstrate by a preponderance of the evidence that new or changed circumstances warrant a change in the prior order to promote the best interest of the child. (*In re S.J*. (2008) 167 Cal.App.4th 953, 959.) The key factors to be considered in assessing a child's best interests are: "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F*. (1997) 56 Cal.App.4th 519, 532.) "We review the grant or denial of a petition for modification under section 388 for an abuse of discretion." (*In re B.D*. (2008) 159 Cal.App.4th 1218, 1228.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319.)

### B. *The Denial of Reunification Services Was Not an Abuse of Discretion*

The juvenile court concluded that mother established changed circumstances but that reunification nevertheless was not in the children's best interests. In view of the relevant factors and the evidence before the court, that conclusion cannot be said to exceed the bounds of reason.

First, the juvenile court reasonably could have concluded from mother's history of drug abuse (including relapses flowing prior treatment programs) that the problem leading to the dependency was serious. Second, the evidence showed that both children

6

had bonded with their relative caregivers. J.O. consistently refused to see mother, indicating his bond with his caregivers is stronger than that with his mother. And while mother's visits with S.M. went well, supporting an inference of a bond between the two, S.M. was also bonded with his grandparents, and not removing him from their care provides permanence and stability. Third, the court reasonably could have concluded from mother's history of relapse that her drug problem could not be easily removed or ameliorated, even with the support of her sponsor and Narcotics Anonymous.

### C. *The Refusal to Order Visitation is Appealable But Was Not an Abuse of Discretion*

The Department contends that the juvenile court's refusal to order visitation is not appealable because the order originally was made at the dispositional hearing at which a section 366.26 hearing was also set. Accordingly, the Department argues, section 366.26, subdivision (*l*) required mother to challenge the order by writ. (See, e.g., *In re Merrick V.* (2004) 122 Cal.App.4th 235, 247 ["All court orders, regardless of their nature, made at a hearing in which a section 366.26 permanency planning hearing is set must be challenged by a petition for extraordinary writ."].) We disagree. Mother is not challenging the initial order, but the court's later refusal to modify that order as requested in her section 388 petition. Because the court's denial of mother's section 388 petition postdates its order setting the section 366.26 hearing, that denial is not governed by section 366.26, subdivision (*l*). (See *In re Julia U.* (1998) 64 Cal.App.4th 532, 539 [where, as here, the "trial court ordered a section 366.26 hearing . . . long before it gave permission to appellant . . . to file a section 388 petition," mother was not required to challenge denial of section 388 petition by extraordinary writ].)

Nevertheless, we conclude that the juvenile court did not abuse its discretion by denying the section 388 petition with respect to the visitation request. J.O.'s section 366.26 report indicated that he consistently refused visits with mother, said he did not want to live with her, teared up when he was asked about visiting mother, and suffered

7

from anxiety related to the possibility of visiting mother.  The court reasonably could have concluded from that evidence that forced visitation would not be in J.O.'s best interest.

Mother notes that, under section 361.5, subdivision (f), where the juvenile court does not order reunification services it "may continue to permit the parent to visit the child unless it finds that visitation would be detrimental to the child."  But the word "may" is permissive (*Woodbury v. Brown-Dempsey* (2003) 108 Cal.App.4th 421, 433), indicating that the court is not required to permit visitation even absent a finding that visitation would be detrimental to the child.  Moreover, here the court did *permit* visitation, it just refused to *mandate* it.  Thus, section 361.5, subdivision (f), does not undermine our conclusion that the court did not abuse its discretion here.

## III.    DISPOSITION

The judgment is affirmed.

8

 

 

_____
Premo, J.

 

WE CONCUR:

 

_____
Rushing, P.J.

 

_____
Elia, J.